**ORAL ARGUMENT NOT YET SCHEDULED**

**No. 12-5287**

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

TERESA SLEDGE AND ANDREA HENSON,
CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF RICO WOODLAND,

*Plaintiffs-Appellants*,

*v.*

FEDERAL BUREAU OF PRISONS,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of Columbia

**PUBLIC BRIEF FOR PLAINTIFFS-APPELLANTS**

DAVID P. DONOVAN
CHARLES C. SPETH
PHILIP R. SEYBOLD
STEPHEN V. CAREY
HARYLE KALDIS
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006-1420
(202) 663-6000
david.donovan@wilmerhale.com

January 30, 2013

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

(A) *Parties*.  The parties before the District Court were former Plaintiff

Steven Sledge, now deceased, as personal representative of the Estate of Rico

Woodland; Plaintiff Dianne D. Sledge; Plaintiff-Appellant Teresa Sledge, as co-

personal representative of the Estate of Rico Woodland; Plaintiff-Appellant Andrea

Henson, as co-personal representative of the Estate of Rico Woodland; and

Defendant-Appellee the United States of America.  The parties before this Court

are Plaintiff-Appellant Teresa Sledge, as co-personal representative of the Estate of

Rico Woodland; Plaintiff-Appellant Andrea Henson, as co-personal representative

of the Estate of Rico Woodland; and Defendant-Appellee the United States of

America.

(B) *Rulings Under Review*.  The ruling under review is the decision of the

Honorable Roger W. Titus in *Sledge v. United States*, --- F. Supp. 2d ----, 2012 WL

2905149 (D.D.C. July 13, 2012).

(C) *Related Cases*.  Plaintiffs-Appellants are unaware of any related cases.

Dated: January 30, 2013                   Respectfully submitted,

                                          /s/  David P. Donovan

                                          DAVID P. DONOVAN
                                          CHARLES C. SPETH
                                          PHILIP R. SEYBOLD
                                          STEPHEN V. CAREY
                                          HARYLE KALDIS
                                          WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
                                          1875 Pennsylvania Avenue, N.W.
                                          Washington, D.C.  20006-1420
                                          (202) 663-6000
                                          david.donovan@wilmerhale.com

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED
    CASES ................................................................................................. i

TABLE OF AUTHORITIES .................................................................... v

GLOSSARY ........................................................................................ vii

JURISDICTIONAL STATEMENT ......................................................... 1

STATEMENT OF THE ISSUES ............................................................. 1

RELEVANT STATUTES ........................................................................ 2

STATEMENT OF FACTS ....................................................................... 3

    A.    The Attack on Rico Woodland ................................................. 3

    B.    The Unit 3-A Officer Post ......................................................... 7

        1.    Physical Description of Unit 3-A ..................................... 7

        2.    Post Orders ...................................................................... 8

        3.    Directives Applicable to the Unit-3A Officer's
            Post .................................................................................. 9

    C.    The Proceedings Below ........................................................... 10

SUMMARY OF ARGUMENT .............................................................. 11

STANDARD OF REVIEW ................................................................... 13

ARGUMENT ...................................................................................... 13

I.    UNDER THE TWO-STEP "*GAUBERT/BERKOVITZ*" TEST, THE
    DISCRETIONARY FUNCTION EXCEPTION SERVES AS A LIMITED
    EXCEPTION TO THE FTCA'S BROAD WAIVER OF SOVERIGN
    IMMUNITY .................................................................................. 13

II.    THE UNIT 3-A OFFICER VIOLATED MANDATORY POST ORDERS ...................16

    A.    ........................................................................17

    B.    ........................................................................22

III.    EVEN IF THE UNIT 3-A OFFICER DID NOT VIOLATE HIS POST
ORDERS, HIS DECISION TO LEAVE THE UNIT TO SMOKE A
CIGARETTE IS NO GROUNDED IN ANY POLICY CONSIDERATION ...................27

CONCLUSION .........................................................................33

ADDENDUM

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Alfrey v. United States*, 276 F.3d 557 (9th Cir. 2002) ..............................33

*Andrulonis v. United States*, 952 F.2d 652 (2d Cir. 1991) .....................................32

*Ashford v. United States*, No. 10-40804, 2012 WL 6935132
    (5th Cir. Mar. 5, 2012)...............................................................33

\* *Berkovitz v. United States*, 486 U.S. 531 (1988) ...................................12, 13, 14, 15

*Brembry v. United States*, No. 10-cv-388, 2011 WL 121741
    (W.D. Va. Jan. 13, 2011)...........................................................15, 24, 25, 33

*Calderon v. United States*, 123 F.3d 947 (7th Cir. 1997)........................................33

*Chess v. United States*, 836 F. Supp. 2d 742 (N.D. Ill. 2011) .................................30

\* *Cope v. United States*, 45 F.3d 445 (D.C. Cir. 1995) ............... 13, 14, 15, 16, 30, 31

*Coulthurst v. United States*, 214 F.3d 106 (2d Cir. 2000) ...........................28, 30, 32

*D'Antuono v. United States*, No. 07-cv-123, 2010 WL 2465493
    (N.D. Tex. June 15, 2010) ..........................................................15

*Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp.*,
    441 F. Supp. 2d 695 (M.D. Pa. 2006)............................................27

*Dykstra v. United States Bureau of Prisons*, 140 F.3d 791
    (8th Cir. 1998) .........................................................................33

*Garza v. United States*, 161 F. App'x 341 (5th Cir. 2005)................................15, 21

*Gray v. United States*, No. 11-3918, 2012 WL 2384251
    (3d Cir. June 26, 2012) .............................................................22

————————————

\*  Authorities upon which we chiefly rely are marked with asterisks.

*Hartman v. Holder*, No. 06-cv-6107, 2009 WL 792185
(E.D.N.Y. Mar. 23, 2009) .................................................................31, 32, 33

*In re Glacier Bay*, 71 F.3d 1447 (9th Cir. 1995) .....................................15

*Loughlin v. United States*, 393 F.3d 155 (D.C. Cir. 2004) ................13, 31

*Macharia v. United States*, 334 F.3d 61 (D.C. Cir. 2003).......................13

*Montez v. United States* 359 F.3d 392 (6th Cir. 2004) ............................33

*Palay v. United States*, 349 F.3d 418 (7th Cir. 2003)..................15, 28, 30

*Parrott v. United States*, 536 F.3d 629 (7th Cir. 2008) ...........................15

*Rainey v. American Forest & Paper Ass'n*, 26 F. Supp. 2d 82
(D.D.C. 1998) ..........................................................................................26

*Santana-Rosa v. United States*, 335 F.3d 39 (1st Cir. 2003)...................33

*   *United States v. Gaubert*, 499 U.S. 315 (1991) .....................12, 14, 15, 16

*Valet v. United States*, No. 04-cv-4957, 2006 WL 624897
(E.D.N.Y. Mar. 9, 2006).........................................................................32

## STATUTES AND RULES

28 U.S.C.
    § 1291 ....................................................................................................1
    § 1331 ....................................................................................................1
    § 1346 ...........................................................................................1, 2, 13
    § 2680 ..............................................................................................2, 10

Fed. R. Civ. P.
    Rule 12.......................................................................................10, 11, 33
    Rule 30.......................................................................................23, 24, 26

## OTHER AUTHORITIES

*American Heritage Dictionary, Second College Edition* (1985)..............18

*Webster's New College Dictionary* (2007)...............................................18

*Webster's Third New International Dictionary* (2002) ............................18

## GLOSSARY

BOP             Bureau of Prisons

FCI             Federal Correctional Institution

FTCA            Federal Tort Claims Act

## JURISDICTIONAL STATEMENT

The district court had federal subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1346(b).  The district court entered final judgment on July 13, 2012, JA99, and this Court has jurisdiction under 28 U.S.C. § 1291 to review that order. Appellants filed a timely notice of appeal on September 7, 2012.  JA100-102.

## STATEMENT OF THE ISSUES

This case involves a correctional officer's negligent failure to monitor the prison housing unit to which he was assigned, allowing an obvious, prolonged, and savage attack on an inmate inside that unit to occur unnoticed.  The officer left the interior of the housing unit completely unmonitored and, while he stood outside with his back to the unit and smoked a cigarette, inmate Rico Woodland was brutally beaten by his cellmate within their cell, causing Woodland massive brain damage that left him without use of his arms and legs until he died from his injuries more than three years later.

A number of inmates throughout the housing unit witnessed the attack— hearing loud and violent noises from the struggle and observing other inmates assisting in the assault by preventing Woodland from escaping his cell and by attempting to hide the attack from the view of security cameras.

Nonetheless, the district court held that Appellants' negligence claims should be cut off at the outset, holding that the discretionary function exception to

the Federal Tort Claims Act leaves the federal courts without jurisdiction to hear the case.

This appeal raises two issues:

1.      Whether the district court erred in holding that the discretionary function exception to the Federal Tort Claims Act deprived it of subject matter jurisdiction because mandatory prison policies left the officer with discretion to leave the prison housing unit to which he was assigned unmonitored for more than ten minutes; and

2.      Even if the district court correctly found that prison policies did not prescribe a specific course of conduct, whether it erred in holding that the discretionary function exception deprived it of subject matter jurisdiction because the officer's decision to leave the unit unmonitored involved public policy considerations.

## RELEVANT STATUTES

The relevant texts of the Federal Tort Claims Act, 28 U.S.C. § 1346(b), and the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a), are reproduced as an Addendum at the end of this brief.

## STATEMENT OF FACTS

### A.     The Attack on Rico Woodland

Around noon on October 15, 2002, Officer Richard Sweithelm, a federal correctional officer employed at FCI-Allenwood in Pennsylvania, assumed the Unit Officer post in inmate housing Unit 3-A, one of eight housing units in the prison and one of only two non-smoking units.  JA156-157, 535, 850.  Officer Sweithelm, a smoker, had never worked this post before and was filling in for an absent co-worker.  JA158, 369, 526.

A little over thirty minutes after he arrived, a "controlled movement" was announced.  JA511.  Controlled movements or "moves" are generally ten-minute periods in which inmates are permitted to move from one area of the prison to another.  JA290, 866.  As soon as the controlled movement began, Officer Sweithelm opened the unit's secure doors to allow inmates to exit the unit.  He then left the unit, walked approximately ten to twelve feet from the unit's outer door, and lit a cigarette.  He stood there smoking, with his back to the unit, for over ten minutes.  JA157-158, 504-507, 586.  He did not engage with inmates entering or leaving the unit while he stood outside smoking.  JA586.

While Officer Sweithelm smoked outside, inmate Rico Woodland was inside his cell in Unit 3-A, being brutally beaten by his cellmate, Jesse L. Sparks—a beating so severe that it sent Woodland into a months-long coma, inflicted massive brain damage, and left him without the use of his arms and legs and in severe psychological distress until he died from his injuries in January 2006.  JA13, 15, 835, 840-841, 926.  Woodland suffered an asthma attack during the assault, and he lost all ability to defend himself from Sparks, who repeatedly kicked him in the head and upper body with steel-toed boots.  JA831, 835, 840, 926.  While Sparks attacked, a third inmate, Ishmael Ford-Bey, stood outside Woodland's cell and held the cell door closed.  ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮  At least once, Woodland struggled to push through the door, but Ford-Bey held the door closed so that he could not escape.  JA840.  Also during the assault, a fourth inmate, Preston Bryant, positioned two cell doors in order to block Cell 109 and Ford-Bey's activities from view of the unit's security cameras.  JA840-841.

▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮

This attack on Rico Woodland was extraordinary in both duration and severity.  Neither the BOP's designated representative nor the individual prison employees that were deposed were able to identify another assault at FCI-Allenwood that lasted as long as the assault on Woodland.  JA348, 615-616, 685-

686, 804.   Nor were they able to identify another assault at FCI-Allenwood that was reported to have been as loud as the assault on Woodland, resulted in such severe injuries, or required the use of a Life Flight helicopter to transport the victim out of the prison.  JA348-349, 621, 686, 689, 782, 785. ▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ According to Warden Stanley Yates, a BOP employee since 1975, the assault was "[v]ery unusual." JA733; *see also* JA698, 734, 737.

Officer Sweithelm could not see the commotion the assault caused among the other inmates within the housing unit because, for the entirety of the controlled move, he stood outside the unit with his back turned to it.  JA504-507 (acknowledging that Officer Sweithelm faced outwards, "[a]way from the unit doors," throughout the movement), 586.  He could not hear the loud noises coming from Woodland's cell because he never once turned his attention to the unit's interior as he stood outside ten to twelve feet from the unit doors, taking a cigarette break.  JA627, 630.  Lt. Lyons, the BOP's Rule 30(b)(6)  representative, testified on behalf of the BOP:

> Q:     [D]oes it seem atypical for loud banging to be occurring in cells
> off of the common area and for inmates with cells across and above
> and in different areas of the common area to report hearing loud
> banging for periods as long as 10 minutes without a staff [member]
> becoming aware of that noise and investigating it?

A:     *In this specific incident I would say it's related to the fact that Officer Sweithelm was positioned outside of the sally port outside of the housing unit and not within the housing unit.*

JA347-348 (emphasis added).  As numerous BOP employees confirmed, if Officer Sweithelm had observed the inmate activity occurring inside Unit 3-A during the controlled movement—including Ford-Bey holding the cell door closed and inmates conspicuously watching the fight from the unit's common area—or heard the noises coming from the cell, he would have been required to investigate the situation.[1]

## B.     The Unit 3-A Officer Post

### 1.     *Physical Description of Unit 3-A and the Compound*

The inmate housing units at FCI-Allenwood are divided into two sides, an A Unit and a B Unit (*e.g.*, Unit 1-A, Unit 1-B, *etc.*).  JA281.  Each side is triangular

---

[1]

in shape, with a central common area and two tiers of inmate cells running along the perimeter. Woodland's cell, Cell 109, was located midway across the lower tier of cells along the longest side of the triangle. JA266-267, 542, 839. The entrance to each unit is comprised of two doors, an outer and an inner door. The space between the doors, spanning a distance of roughly eight to ten feet, is called the "sally port." JA266, 278.

The open-air grounds between the housing units and other buildings inside the prison's secure perimeter is called the "Compound." JA284-285. A walkway leads from each housing unit's outer doors to the center of the Compound and connects with the walkways from the other housing-unit buildings. JA283. These walkways or sidewalks are part of the Compound and are not considered part of the housing units. JA284 ("If you're outside of the building on a sidewalk you're on the compound."), 545 ("[The walkway is] called the compound."), 639-640, 647.

         2.     *Post Orders*

Correctional officers at FCI-Allenwood are subject to specific prison directives and policies set forth in three types of documents: (1) Program Statements, (2) Institution Supplements, and (3) Post Orders. JA705. Program Statements are issued by the BOP and establish the national policies for all institutions on topics such as inmate accountability, discipline, and visitation. JA231-232. Institution Supplements adapt the more-general Program Statements

to a particular institution.  JA229.  Post Orders apply to the specific position, or "post," to which an officer is assigned.  The officers' "post assignments" are organized around specific locations or "areas" within the prison, including housing units.  JA227-228, 404.  Post Orders are divided into three sections:  (1) General Post Orders, which apply to all posts within the institution; (2) Specific Post Orders, which provide a description of duties and responsibilities for a particular post (*e.g.*, the Unit 3-A Officer Post); and (3) Special Instructions, which describe the responsibilities and expectations of the particular post with even greater specificity.  JA226-227, 245-246.

3.     *Directives Applicable to the Unit-3A Officer's Post*

Several Post Orders make it clear that a paramount responsibility of any correctional officer in the prison, including unit officers, is inmate accountability and supervision.  Two specific and discrete sets of responsibilities under the Post Orders are at issue in this appeal.  JA858-859, 892.



### C.    The Proceedings Below

Appellants filed their Third Amended Complaint on September 7, 2007, alleging six claims against Appellee (also referred to as "the Government" or "the United States" herein) under the Federal Tort Claims Act ("FTCA"). Two of those claims, Counts I and II, are relevant to this appeal. These counts allege personal injury and wrongful death based on the negligent failure of FCI-Allenwood employees to detect or stop the October 15, 2002 attack. JA18-21. In December 2007, Appellee first moved to dismiss Counts I and II under Fed. R. Civ. P. 12(b)(1), arguing that the district court lacked subject matter jurisdiction because Appellee was protected by the discretionary function exception to the FTCA, *see* 28 U.S.C. § 2680(a). In an Order dated July 13, 2010, the district court denied

Appellee's motion to dismiss those claims and ordered the parties to conduct limited jurisdictional discovery.[2]

The parties completed jurisdictional discovery, and Appellee renewed its motion to dismiss under Fed. R. Civ. P. 12(b)(1), again arguing that the district court lacked jurisdiction because the discretionary function exception applied. Oral argument was held on Appellee's motion on May 7, 2012 (JA103-154), and on July 13, 2012, the district court granted Appellee's motion and entered judgment against Appellants.  JA67-97, 98, 99.

## SUMMARY OF ARGUMENT

While Officer Sweithelm—the correctional officer assigned to monitor Rico Woodland's prison housing unit—stood outside the unit smoking a cigarette, Woodland was savagely beaten by his cellmate in their cell.  The district court held that the discretionary function exception to the FTCA shielded Officer Sweithelm's negligent failure to monitor the unit, leaving the federal courts without jurisdiction over the case.  Appellants, co-representatives of Woodland's estate, appeal the district court's judgment dismissing their claims.

The district court erred in holding that Officer Sweithelm's conduct fell within the limited exception to the FTCA's broad waiver of sovereign immunity

---

[2]     In 2009, the Chief Justice of the United States Supreme Court reassigned the case from Judge Paul L. Friedman to Judge Roger W. Titus of the U.S. District Court for the District of Maryland, sitting by designation in the U.S. District Court for the District of Columbia.

for torts of government employees.  For the exception to apply, two conditions must exist:  *first*, Appellants' claims must depend on a decision of a government employee that requires some judgment or choice—an exercise of direction—of which he has not been deprived by any regulation or directive; and *second*, the exercise of the direction must involve some economic, social, or political policy judgment.  *United States v. Gaubert*, 499 U.S. 315 (1991); *Berkovitz v. United States*, 486 U.S. 531 (1988).

Neither condition was met in this case.  *First*, Officer Sweithelm's Post Orders included mandatory directives that deprived him of discretion to take the actions he did.  Officer Sweithelm's decision to leave the unit unmonitored to take a cigarette break is not grounded in public policy considerations, and thus not the type of decision that the exception was designed to protect.

## STANDARD OF REVIEW

This Court reviews the district court's application of the discretionary function exception *de novo*.  *See Loughlin v. United States*, 393 F.3d 155, 162 (D.C. Cir. 2004) ("Because federal jurisdiction determinations are purely legal, [the Court] review[s] *de novo* the District Court's judgment on the applicability of the discretionary function exception."); *Macharia v. United States*, 334 F.3d 61, 64 (D.C. Cir. 2003) (same).

## ARGUMENT

### I.    UNDER THE TWO-STEP "*GAUBERT*/*BERVOVITZ*" TEST, THE DISCRETIONARY FUNCTION EXCEPTION SERVES AS A LIMITED EXCEPTION TO THE FTCA'S BROAD WAIVER OF SOVEREIGN IMMUNITY

The FTCA establishes the general principle that the United States is liable for "injury or death caused by the negligent or wrongful act or omission of any employee of the Government … if a private person[] would be liable" under similar circumstances in the relevant jurisdiction.  28 U.S.C. § 1346(b)(1).  The discretionary function exception to the FTCA serves as a limited carve-out to the statute's "broad waiver of sovereign immunity."  *Berkovitz v. United States*, 486 U.S. 531, 535 (1988).  The exception "was designed to prevent the courts from 'second guessing' … the way that government officials choose to balance economic, social, and political factors."  *Cope v. United States*, 45 F.3d 445, 448 (D.C. Cir. 1995).  It was not meant "to swallow the FTCA's sweeping waiver" of

- 13 -

sovereign immunity. *Id.* at 449. Thus, the exception protects only government employees' conduct involving the exercise of discretion grounded in economic, social, and political considerations. *See id.* at 448.

      To ensure that the discretionary function exception serves its limited purpose, courts apply the two-step "*Gaubert/Berkovitz*" test. *See United States v. Gaubert*, 499 U.S. 315 (1991); *Berkovitz*, 486 U.S. 531 (1988). Under the test, the court must first determine whether the claim depends on "discretionary" decisions requiring "judgment or choice" by authorized employees. *Gaubert*, 499 U.S. at 322; *Berkovitz*, 486 U.S. at 536. If the claim depends on an employee's violation of a directive under which the employee had no discretion, the exception does not apply, the inquiry ends at step one, and sovereign immunity does not bar the cause of action. *See Gaubert*, 499 U.S. at 322; *Berkovitz*, 486 U.S. at 536 (explaining that "the employee has no rightful option but to adhere to the directive"). If the claim does depend on a discretionary decision, the court proceeds to the second step, determining whether the decision involved a "policy judgment that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 332. If it does not, again sovereign immunity does not bar the cause of action.

      In the first step of the "*Gaubert/Berkovitz*" test, the question is "whether any 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Cope*, 45 F.3d at 448 (quoting *Gaubert*, 499 U.S. at

- 14 -

322).  If a specific directive controls the employee's conduct, the exception cannot apply because "the employee had no 'choice.'"  *Id.*  The "only issue" that remains is "whether the employee followed the directive … or whether the employee did not follow the directive, thus opening the government to suit."  *Id.*[3]  Importantly, in the prison context, Program Statements, Institution Supplements, and Post Orders may "specifically prescribe[] a course of action for an employee to follow," *Cope*, 45 F.3d at 448, and the discretionary function exception cannot shield a prison employee's failure to follow these mandatory directives.[4]

If the employee did exercise *bona fide* discretion, the second step of the test requires the court to determine whether the exercise of that discretion required "public policy" judgment.  *Gaubert*, 499 U.S. at 323; *Berkovitz*, 486 U.S. at 537.  In addressing this step, this Court has "consistently held that the discretionary function exception applies only where the question is not negligence but social wisdom, not due care but political practicability, not reasonableness but economic

---

[3]     It does not matter that *some* government official may have exercised discretion at *some* point in time; the exception does not apply unless the "acting employee" actually possessed discretion to act as he did.  *Berkovitz*, 486 U.S. at 536; *see also In re Glacier Bay*, 71 F.3d 1447, 1451 (9th Cir. 1995) (question "is not whether the Government as a whole had discretion at any point, but whether its allegedly negligent agents did in each instance").

[4]     *See, e.g.*, *Parrott v. United States*, 536 F.3d 629 (7th Cir. 2008) (Program Statement); *Garza v. United States*, 161 F. App'x 341 (5th Cir. 2005) (Post Order); *Palay v. United States*, 349 F.3d 418 (7th Cir. 2003) (Program Statement); *Brembry v. United States*, No. 10-cv-388, 2011 WL 121741 (W.D. Va. Jan. 13, 2011) (Post Order); *D'Antuono v. United States*, No. 07-cv-123, 2010 WL 2465493 (N.D. Tex. June 15, 2010) (Post Order).

expediency." *Cope*, 45 F.3d at 450. Because "nearly every government action is, at least to some extent, subject to 'policy analysis,'" the "mere presence of choice … does not trigger the exception." *Id.* at 448-449. Instead, only decisions "*fraught with public policy considerations*" are exempt under the exception. *Id.* at 451 (emphasis added). These "governmental actions and decisions based on considerations of public policy," *Gaubert*, 499 U.S. at 323, must be distinguished from decisions involving routine or "garden-variety" discretion, which are not exempted from liability. *Cope*, 45 F.3d at 448-450. To hold otherwise "would not only eviscerate the second step of the analysis set out in *Berkovitz* and *Gaubert*, but it would allow the exception to swallow the FTCA's sweeping waiver of sovereign immunity." *Id.* at 449.

## II. THE UNIT 3-A OFFICER VIOLATED MANDATORY POST ORDERS

Officer Sweithlem's decision to leave Unit 3-A unmonitored and unsupervised for over ten minutes during the controlled movement so that he could smoke a cigarette violated two directives contained in his Post Orders. ▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓ Because these directives prescribed specific actions that Officer Sweithelm was required to take, the discretionary function exception does not protect his failure to do so.

- 16 -

**A.** ████████████████████████████

████████████████████████

████████████████████████

████████████████████████

Although this argument was squarely presented in the district court, the court never directly addressed it, focusing instead on whether this Post Order required Officer Sweithelm *to be in a specific location* during the move, rather than what the Post Order *required Officer Sweithelm to do* during the move.  The district court's holding that the Post Order gave the Unit 3-A Officer discretion to decide where to locate himself thus side-stepped the real issue of whether he had the discretion to simply ignore what was occurring inside the unit during the controlled movement.

The Government did not dispute the following facts. ████████████

████████████████████████

████████████████████████

████████████████████████

████████████████ For the entirety of the controlled movement during which Woodland was being beaten, Officer Sweithelm stood outside of the housing unit on the Compound, approximately ten to twelve feet from the entrance to the unit, facing away from the unit's entry doors.  At no time during the

controlled movement did Officer Sweithelm ever turn his attention to the unit's

interior, thus making it impossible for him to see inmates moving inside of the unit

or to hear the loud and violent assault taking place in Cell 109.





The testimony of Operations Lieutenant Robert Womeldorf also

demonstrates that the terms of the Post Order are free from any ambiguity:



JA84 ("[T]here is an absence of a mandatory Post Order that an officer must stand inside, outside, or patrol inside and outside the unit during the controlled move."). According to the district court, housing unit officers have "reasonable leeway in deciding *where to position themselves* during a controlled move," and "there is no binding directive that mandates an officer spend a specific amount of time *in a specific location*." *Id.* (emphasis added).



---

[6]    In fact, Appellants expressly conceded that this directive did not control Sweithelm's positioning during the controlled move. JA83 ("Both parties agree that the Post Orders do not mandate where a unit officer should position himself during a controlled move.").

[7]

[8]

Courts have generally found the discretionary function exception to be inapplicable to similar prison directives. For example, the Fifth Circuit held that a Post Order mandating that "[d]uring closed movement, [the corrections officer] *will patrol* the recreation yard" specifically directed the officer's conduct. *Garza v. United States*, 161 F. App'x 341, 344 (5th Cir. 2005) (emphasis added). In that case, the plaintiff inmate was injured by fellow inmates after a fight broke out between rival gang members in the recreation yard. *Id.* at 342. Because an applicable Post Order "prescribed *a set course of action* for the post guard on duty

---

[8]

       The district court reasoned that an interpretation of the Post Order that required the officer to monitor traffic both inside and outside the unit would require officers to "position themselves inside the unit and outside the unit for *an equal amount of time*." *Id.* (emphasis added). But that interpretation is neither required nor reasonable.

to follow to maintain order and safety during her shift," the court held that the

guard had no discretion to choose not to patrol the recreation yard during the

designated period.  *Id.* at 344 (emphasis added).  The directive at issue in *Garza*,

████████████████████████████████████

████████  required that the officer *do* a specific task (patrol the recreation yard)

for a specific period (during the closed movement).  ████████████████████

████████████████████████████████████

████████████████████████  *See also Gray v. United States*, No. 11-

3918, 2012 WL 2384251, at *3 (3d Cir. June 26, 2012) (per curiam) (holding that

prison guard violated a mandatory directive by failing to account for and dispose of

shaving razors at the end of the shower period).

████████████████████████████████

███████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████

**B.**  ████████████████████████████████████
████████████████████

As the district court acknowledged, "[t]he Post Orders provide in several

sections, that once an individual is on a post, he is not permitted to leave until

properly relieved or instructed to do so by his or her superior."  JA83;  ████████

- 22 -

[9]

---

[9]     *Brembry v. United States* provides an analogous example.  No. 10-cv-388, 2011 WL 121741 (W.D. Va. Jan. 13, 2011).  In *Brembry*, Post Orders required that a unit officer "remain inside the inner door of the Unit during controlled movements."  *Id.* at *4.  Notwithstanding the directive, the unit officer went outside the unit during a controlled movement and, while he stood outside, three inmates attacked another inmate.  *Id.* at *3.  The court held that, because the Post Orders mandated that he remain in the unit, the unit officer had no discretion to stand outside.  *Id.* at 6.

[REDACTED].[10]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

---

[10] [REDACTED] 2011 WL 121741, at *4 (describing Post Orders requiring the unit officer to stand at the inner door and separate Post Orders requiring the unit officer to observe the Compound at the end of the movement to ensure that approaching inmates be secured in their designated housing units). [REDACTED]

The deposition testimony of the BOP's designated representative under Rule 30(b)(6), Lt. Lyons, [redacted].[11] [redacted].[12] [redacted] The BOP is bound by that testimony. *See Rainey v. American Forest & Paper Ass'n*, 26 F. Supp. 2d 82, 95 (D.D.C. 1998) (Rule 30(b)(6) "binds the corporate party to the positions taken by its 30(b)(6) witnesses so that opponents are, by and large, insulated from trial by ambush"). Absent certain circumstances not relevant here, the BOP cannot revise its testimony regarding the physical boundary of the housing unit post at FCI-Allenwood through the subsequent testimony of fact witnesses. *See id.* at 94 ("Unless it can prove that the information was not known or was inaccessible, a

---

[11] [redacted]

[12]    Under Rule 30(b)(6), when a party deposes a governmental agency, the agency must designate "one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify." Fed. R. Civ. P. 30(b)(6). Pursuant to a notice of deposition of the BOP under Rule 30(b)(6), the BOP designated Lt. Lyons—and only Lt. Lyons—as its representative regarding the meaning of BOP Policies related to prison security at FCI-Allenwood.

corporation cannot later proffer new or different allegations that could have been made at the time of the 30(b)(6) deposition."); *Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp.*, 441 F. Supp. 2d 695, 722 n.17 (M.D. Pa. 2006) (same).

But the district court's decision makes no mention of Lt. Lyons's testimony. Nor does the decision address the plain meaning and structure of the Post Orders. Appellants respectfully submit that, by not addressing the binding testimony of the BOP's own designated representative ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## III.   EVEN IF THE UNIT 3-A OFFICER DID NOT VIOLATE HIS POST ORDERS, HIS DECISION TO LEAVE THE UNIT TO SMOKE A CIGARETTE IS NOT GROUNDED IN ANY POLICY CONSIDERATION

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮ the discretionary function exception is inapplicable under the second step of the "*Gaubert/Berkovitz*" analysis because Officer Sweithelm's decision to go outside to smoke a cigarette, rather than to supervise the unit during the controlled movement, was not based on considerations of social, political, or economic policy.  To the contrary, a decision to leave a prison unit unmonitored in order to

smoke a cigarette is precisely the type of conduct generally recognized as *not* being grounded in policy considerations that would implicate the discretionary function exception.  Thus, the U.S. Court of Appeals for the Seventh Circuit observed that, if a corrections officer assigned to monitor a prison unit at the time that a gang altercation broke out had "left the unit unattended in order to enjoy a cigarette or a snack," then "[t]hat type of carelessness would not be covered by the discretionary function exception, as it involves no element of choice or judgment grounded in public policy considerations."  *Palay v. United States*, 349 F.3d 418, 432 (7th Cir. 2003).  Similarly, the U.S. Court of Appeals for the Second Circuit has identified "[a]n inspector's decision (motivated simply by laziness) to take a smoke break rather than inspect the machines" as an "example[] of negligence … that do[es] not involve considerations of public policy."  *Coulthurst v. United States*, 214 F.3d 106, 111 (2d Cir. 2000) (internal quotation marks omitted).

The district court, however, stated that the question under the second prong of the "*Gaubert/Berkovitz*" analysis was whether "a correctional officer's decision where to strategically position himself during a controlled move" implicates policy considerations.  JA87.  After reasoning that such a decision relates to "the protection, safety or classification of prisoners," the district court concluded that the decision was grounded in public policy.

Here, however, there is no evidence that Officer Sweithelm's decision to stand ten to twelve feet outside the outer door with his back to the unit, resulting in his complete failure to monitor the inside of the unit, involved any "strategic" considerations or "the protection, safety or classification of prisoners." Instead, the evidence shows that Officer Sweithelm's conduct was self-serving and unrelated to prison security. Officer Sweithelm was a smoker who, on the day of the attack, was filling in for an absent co-worker in a non-smoking housing unit, and he left the unit's interior unmonitored to go outside and smoke as soon as the unit's doors were unlocked. Once outside, Officer Sweithelm did not perform *any* tasks related to prison safety or security.

These undisputed facts show that Officer Sweithelm's decision to stand ten to twelve feet away from the door during the movement was not the result of him weighing competing considerations as to how best to comply with his Post Orders ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Rather than evaluating his obligations and then placing himself in a position to perform them, he had simply abandoned them altogether. *See, e.g.*, *Chess v. United States*, 836 F. Supp. 2d 742, 751 (N.D. Ill. 2011) (holding that prison guard's decision to pack up personal belongings prior to end of shift is not subject to policy analysis because "even if discretionary, [the decision] is based on personal interest"); *Coulthurst*, 214 F.3d at 110 (noting that interpreting the discretionary function exception to apply to "an official's lazy or careless failure to perform his or her discretionary duties" would "lead to absurd results" and "shield almost all government negligence from suit, because almost every act involves some modicum of discretion"). For that reason, the discretion Officer Sweithelm exercised in "positioning" himself ten to twelve feet from the unit—where he was unable to observe or hear the inmates inside the unit—is precisely the sort of careless and inattentive conduct that is *not* protected by the discretionary function exception because "it involves no element of choice or judgment grounded in public policy considerations." *Palay*, 349 F.3d at 432; *see Cope*, 45 F.3d at 448-450

(distinguishing decisions "fraught with public policy considerations" from "garden-variety" negligence).[13]

The United States District Court for the Eastern District of New York's decision in *Hartman v. Holder* is instructive. No. 06-cv-6107, 2009 WL 792185 (E.D.N.Y. Mar. 23, 2009). The plaintiff inmate in *Hartman*, like Woodland, was attacked by fellow inmates. As in this case, the attack went unobserved by the unit officer, even though several other inmates in the unit reported seeing and hearing

---

[13] ███████████████████████████████████████████████████████████████████ For example, in *Cope*, the government argued that its failure to post adequate warning signs on a slippery road was exempt from liability under the discretionary function exception because the decision of whether to post the signs involved the exercise of discretion implicating "'engineering and aesthetic factors.'" 45 F.3d at 451. Although this Court agreed that "*in certain circumstances*, decisions will be exempt under the FTCA because they involve difficult policy judgments balancing the preservation of the environment against the blight of excess [road] signs," the government's argument about that particular stretch of road was "difficult … to accept in view of the fact that" it had "already posted [other] signs in an effort to alert drivers to safety hazards on the road." *Id.* at 452 (emphasis added). As this Court later noted, the "presence of no less than 23 signs on the same strip of road was *probative of the nature of the decision* to place an additional warning sign, because it demonstrated that the Government was not concerned with preserving a pristine view on the particular stretch of road." *Loughlin v. United States*, 393 F.3d 155, 166 (D.C. Cir. 2004) (emphasis added). Here, as in *Cope*, Officer Sweithelm's conduct outside of the unit during the movement is probative of the nature of his decision to stand outside and smoke a cigarette, because it demonstrates that his decision was not concerned with strategic considerations regarding positioning, the weighing of competing security concerns, or other safety or security calculations.

the assault. *Id.* at *3. With language that could almost describe this case, the court explained,

> [The officer's] failure to observe for at least a quarter hour a noisy, violent altercation occurring within a room containing all of the inmates under her supervision, is the sort of careless act over which her general freedom of decision cannot be said to extend. [The inmate's] evidence is more than sufficient to show that [the officer] was distracted or inattentive to her duties in a manner that cannot be explained on policy grounds nor shielded under the discretionary function exception.

*Id.* at *10 (citing *Coulthurst*, 214 F.3d at 109-110); *Andrulonis v. United States*, 952 F.2d 652, 655 (2d Cir. 1991); *Valet v. United States*, No. 04-cv-4957, 2006 WL 624897, at *2 (E.D.N.Y. Mar. 9, 2006)).

Here, due to inattentiveness and self-interest, Officer Sweithelm failed to observe the "noisy" and "violent" altercation in Cell 109; to see the inmates looking on from the common area; to notice the suspicious behavior of Ford-Bey and Bryant; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ JA348-349, 621, 686, 828-831, 835, 840-841, 926. These failures "cannot be explained on policy grounds" and therefore cannot be "shielded under the discretionary function exception." *Hartman*, 2009 WL 792185, at *10.[14]

---

[14] As the district court recognized, certain discretionary decisions regarding the protection, safety, and classification of prisoners are grounded in public policy. JA87-88. However, the fact that *some* decisions about how to handle prisoners are grounded in public policy does not mean that *all* decisions by prison guards are immune from review (or liability). Plainly, as in the cases cited by the district court, policy considerations may inform decisions about how to discipline an

Thus, Officer Sweithelm's decision was "careless or inattentive and not rooted in policy considerations," and "[a]t the Rule 12(b)(1) stage, that is all that is required for [Appellants'] cause of action to continue." *Hartman*, 2009 WL 792185, at *11. The district court erred in holding that this conduct was protected by the discretionary function exception.

## CONCLUSION

For the foregoing reasons, the judgment below should be reversed.

Respectfully submitted,

/s/  David P. Donovan

DAVID P. DONOVAN
CHARLES C. SPETH
PHILIP R. SEYBOLD
STEPHEN V. CAREY
HARYLE KALDIS
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006-1420
(202) 663-6000

January 30, 2013                                   david.donovan@wilmerhale.com

---

inmate (*see Alfrey v. United States*, 276 F.3d 557, 565 (9th Cir. 2002); *Calderon v. United States*, 123 F.3d 947, 950-951 (7th Cir. 1997)); how to classify or place inmates (*see Ashford v. United States*, No. 10-40804, 2012 WL 695132, at *6 (5th Cir. Mar. 5, 2012); *Montez v. United States* 359 F.3d 392, 398-399 (6th Cir. 2004); *Santana-Rosa v. United States*, 335 F.3d 39 (1st Cir. 2003); *Dykstra v. United States Bureau of Prisons*, 140 F.3d 791 (8th Cir. 1998)); and how to conduct cell-searches (*see Alfrey*, 276 F.3d at 565). By comparison, the conduct at issue here—Sweithelm's decision to leave the unit unattended to smoke a cigarette—cannot be explained on policy grounds. *See Hartman*, 2009 WL 792185, at *10; *cf. Brembry*, 2011 WL 121741, at *5 ("Clearly, those cases which recognize that prison administrators have discretion to make staffing decisions and promulgate policies are not on all-fours with this case.").

- 33 -

# ADDENDUM

## ADDENDUM TABLE OF CONTENTS

Page

28 U.S.C. § 1346 (excerpts) ............................................................................Add. 1

28 U.S.C. § 2680 (excerpts) ...........................................................................Add. 1

**Excerpts from**
**28 U.S.C. §§ 1346, 2680**

\*      \*      \*

## § 1346.  United States as Defendant

\*      \*      \*

(b)

(1)  Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

\*      \*      \*

## § 2680.  Exceptions

The provisions of this chapter and section 1346(b) of this title shall not apply to—

(a)  Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

\*      \*      \*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).

1.      Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(a)(7)(B), the brief contains 8,660 words.

2.      The brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.  As permitted by Fed. R. App. P. 32(a)(7)(C), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.


/s/  Stephen V. Carey
STEPHEN V. CAREY

January 30, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system.  Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.


/s/  Stephen V. Carey
STEPHEN V. CAREY